**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IMMINENT SURGICAL
ASSOCIATES, P.A.,

Plaintiff,

Case No.: _____

v.                                                    State Court Case No.: 25-CA-006917

UNITEDHEALTHCARE
SERVICES, INC.

Defendant.

_____/

**UNITEDHEALTHCARE SERVICES, INC.'S NOTICE OF REMOVAL**

Defendant, UnitedHealthcare Services, Inc. ("UHS"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and Middle District of Florida Local Rule 1.06(b), hereby removes the state court action described below to this Court. In support, UHS states:

## I.   **Background and Plaintiff's Allegations**

1.     This action was filed on July 21, 2025, in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida as *Imminent Surgical Associates, P.A. v. United Healthcare Services, Inc.*, Case No. 25-CA-006917 (Fla. 13th Jud. Cir.) (the "State Court Action"). *See* Complaint, attached as **Exhibit 1** ("Complaint" or "Compl.").

1

2.      Plaintiff in the Complaint generally alleged that the amount sought for unspecified health claims that were denied or under-reimbursed was "more than $50,000, exclusive of attorney's fees, interest, and costs." *See* Compl. ¶ 1.

3.      UHS was served with a copy of the Complaint and Summons in the State Court Action on or about January 23, 2026.

4.      Counsel for UHS first requested a list of the health claims that are being disputed from Plaintiff's counsel on January 28, 2026.

5.      Plaintiff advised UHS's counsel it was not comfortable providing a disputed claims list until a protective order was in place and suggested it had a form order that was satisfactory.

6.      However, no such protective order was provided, so UHS prepared one and sent it to Plaintiff's counsel on March 4, 2026; Plaintiff's counsel confirmed same was acceptable on March 6, 2026. The protective order was executed by the State Court on March 13, 2026.

7.      Still, no disputed claims list was provided, despite additional follow-up emails.

8.      On March 26, 2026, Plaintiff's counsel advised there were technical issues hampering the ability to provide a listing of the disputed claims.

9. Finally, on April 2, 2026, Plaintiff filed and served on UHS a "Notice of Filing Claims List," which purported to identify the health claims that are at-issue and the amount in dispute that Plaintiff seeks to recover from UHS in this action ("Plaintiff's Claims List"). Plaintiff's Claims List is in PDF format, although it appears to be generated from a spreadsheet software, such as Excel. A redacted copy of Plaintiff's Claims List is attached as **Exhibit 2**.

10. Plaintiff's Claims List reflected that Plaintiff sought approximately $910,282.00 on over 700 claim lines. *See* Ex. 2 at 22. This was the first notice that the amount in controversy could allow for removal based on diversity jurisdiction. However, there was still some uncertainty whether Plaintiff's Claim List was for all health claims at issue in this action or was intended to reflect disputed health claims in this action and in another suit brought by Plaintiff against UnitedHealthcare of Florida, Inc. and UnitedHealthcare Insurance Co., in the case styled: *Imminent Surgical Associates, P.A. v. UnitedHealthcare of Florida, Inc. and UnitedHealthcare Insurance Co.*, Case No. 25-CA-011441 (Fla. 13th Jud. Cir.) (the "Imminent Surgical / UHC of Florida Lawsuit"). UHS immediately requested clarification and received no response.

11. Thereafter, a hearing on UHS's motion to dismiss, took place on April 8, 2026 and Plaintiff's counsel stated that Plaintiff's Claims List reflected "a little over a million dollars in bills" owed and approximately $113,000 paid.

3

*See* April 8, 2026, Hearing Transcript at 14:10–12, attached as **Exhibit 3** ("Hr'g Tr."). It appeared to be the clarification that UHS was seeking: that the amount in controversy was over $900,000.

12.    However, this became unclear again when, on April 24, 2026, Plaintiff's counsel advised UHS's counsel that Plaintiff's Claims List covered claims against UHS but also included disputed claims in the Imminent Surgical / UHC of Florida Lawsuit.

13.    Plaintiff's counsel also confirmed he did not have a breakdown of Plaintiff's Claims List vis-à-vis the particular defendant entities.

14.    UHS's counsel has requested a spreadsheet version of Plaintiff's Claims List, but as of this filing has not received same.

15.    Plaintiff's Claims List does not identify which claims were adjudicated by UHS or other United entities.

16.    To analyze whether the claims on Plaintiff's Claims List were adjudicated by UHS, data of all medical claims submitted by Plaintiff to UHS and affiliates using Plaintiff's tax identification number was gathered.

17.    This data was preliminarily matched with Plaintiff's Claims List and it was determined that Plaintiff's Claim List includes (at least) 117 disputed claim lines administered by UHS where Plaintiff billed a total of $179,501.00. For those 117 claim lines, UHS paid $21,466.18 leaving a difference of $158,034.82 which is the minimum amount at-issue between the

parties. A true and correct copy of the 117 disputed claim lines derived from Plaintiff's Claims List is attached to the Declaration of Mabel S. Fairley. *See* **Exhibit 4**.

18.    There is complete diversity of citizenship between the parties:

i.    Plaintiff is now, and at the time of the filing of the Complaint was, a citizen of Florida. The Complaint alleges that Plaintiff at all times material "was and is a health care provider duly licensed and authorized by the State of Florida to provide health care and treatment in the State of Florida" and is "a Florida corporation that has the authority to transact business in the State of Florida and performed medical services in Hillsborough County, Florida." Compl. ¶¶ 3–4.

ii.    UHS is now, and was at the time of the filing of the Complaint, a Minnesota corporation with its principal place of business in Minnesota. UHS is therefore a citizen of Minnesota for purposes of diversity jurisdiction.

19.    Pursuant to 28 U.S.C. § 1446(a) and Local Rule 1.06(b), UHS has attached: (a) a copy of the Complaint served upon it (Ex. 1) and (b) copies of each paper docketed in the State Court Action as **Composite Exhibit 5** (A copy of the docket for the State Court Action is attached as **Exhibit 6**). A true and correct copy of this Notice of Removal will be filed with the Clerk of the

Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, in accordance with the provisions of 28 U.S.C. § 1446(d), along with a notice of this filing, a copy of which will be served upon all parties.

20. Pursuant to Local Rule 2.02(a), UHS designates Irene Bassel-Frick, Esq. as lead counsel in this action, and Allison Gallagher, Esq., Scott E. Allbright, Jr., Esq., and Keiana Wilkerson, Esq. as additional counsel.

## II. Memorandum of Law

Federal law confers upon district courts original jurisdiction in civil actions between citizens of different states in controversies which exceed the sum of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. An action meeting the requirements of 28 U.S.C. § 1332 may be removed to a district court pursuant to 28 U.S.C. § 1441(b). Removal is proper here because the parties are diverse and the amount in controversy exceeds $75,000.00.

### A. Diversity of Citizenship Exists

To determine the citizenship of a corporation for the purpose of ascertaining diversity jurisdiction, a court examines: (1) the state of incorporation; and (2) the state where the corporation has its principal place of business. 28 U.S.C. § 1332(c)(1). Relevant here, a corporation is considered a citizen of any State in which it has been incorporated. *Fritz v. Am. Home Shield Corp.*, 751 F.2d 1152, 1154 (11th Cir. 1985). Furthermore, a corporation is considered a citizen of the state where it has its principal place of business,

which is "the place where a corporation's officers direct, control and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010) (establishing the "nerve center" test as a uniform approach for determining corporate citizenship).

Here, the parties are citizens of different states: UHS is both incorporated in Minnesota and maintains its corporate offices in Minnesota, and Plaintiff has affirmatively alleged that it conducts business in and is incorporated in Florida. Compl. ¶¶ 3–4. Accordingly, this Notice of Removal is properly based upon complete diversity of citizenship pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

### B.     The Amount in Controversy Exceeds $75,000

Where a case is not removable based on the face of the complaint, it may become removable upon a defendant's receipt of an "other paper" from which it may first be ascertained that the amount in controversy exceeds the jurisdictional minimum required for diversity jurisdiction. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212–13 (11th Cir. 2007) (explaining that removability may be established when the defendant receives an "other paper" and collecting cases); *Bechtelheimer v. Cont'l Airlines, Inc.*, 755 F. Supp. 2d 1211, 1214 (M.D. Fla. 2010) (holding that receipt of a discovery response estimating damages triggered removability where the complaint did not establish the amount in controversy); *Dewitte v. Foremost Ins. Co.*, 171 F. Supp.

3d 1288, 1290 (M.D. Fla. 2016) (finding that medical bills constituted "other paper" sufficient to establish that the amount in controversy exceeded $75,000). The thirty-day removal period begins when the defendant receives the document from which removability may first be ascertained. *See Lowery*, 483 F.3d at 1212–13; *see also* 28 U.S.C. § 1446(b)(3).

Here, the Complaint did not affirmatively allege an amount in controversy exceeding $75,000, instead asserting only that the amount in controversy exceeded $50,000. *See* Compl. ¶ 1. On April 2, 2026, UHS first received information from which it could ascertain that the amount in controversy exceeded $75,000, when Plaintiff provided Plaintiff's Claims List reflecting that Plaintiff seeks at least approximately $910,282.00. UHS initially understood the amount in controversy to have been confirmed at the April 8, 2026 hearing on UHS's motion to dismiss, at which Plaintiff's counsel represented on the record that the Claims List reflected "a little over a million dollars in bills," with only approximately $113,000 paid by UHS. *See* Hr'g Tr. at 14:10–12. However, as noted, Plaintiff's counsel subsequently advised UHS's counsel that Plaintiff's Claims List covered claims against UHS *and* disputed claims in the Imminent Surgical / UHC of Florida Lawsuit. Further, Plaintiff's counsel confirmed he does not have a breakdown of Plaintiff's Claims List vis-à-vis the particular defendant entities.

8

Therefore, to analyze whether the health claims on Plaintiff's Claims List were adjudicated by UHS, data of all medical claims submitted by Plaintiff to UHS and affiliates using Plaintiff's tax identification number was gathered. This data was preliminarily matched with Plaintiff's Claims List and it was determined that Plaintiff's Claim List includes (at least) 117 disputed claim lines administered by UHS where Plaintiff billed a total of $179,501.00. For those 117 claim lines, UHS paid $21,466.18. The difference and amount in controversy is (at least) $158,034.82. A true and correct copy of the 117 disputed claim lines derived from Plaintiff's Claims List is attached to the Declaration of Mabel S. Fairley (Ex. 4-1).

Accordingly, the amount-in-controversy requirement of 28 U.S.C. § 1332 is satisfied, and this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3).

### III.    Conclusion

In sum, there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, the State Court Action is properly removable to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Date: May 1, 2026                    Respectfully submitted,

/s/ *Irene Bassel Frick* \_\_\_\_
**Irene Bassel Frick, Esq.**
   **\*Lead Counsel**
Florida Bar No.: 0158739
irene.basselfrick@akerman.com
nicole.emmett@akerman.com
**Keiana R. Wilkerson, Esq.**
Florida Bar No. 1050221
keiana.wilkerson@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Telephone: (813) 223-7333

**Allison P. Gallagher, Esq.**
Florida Bar No.: 808911
allison.gallagher@akerman.com
nicole.emmett@akerman.com
**AKERMAN LLP**
420 South Orange Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 423-4000

**Scott E. Allbright, Jr., Esq.**
Florida Bar No.: 102958
scott.allbright@akerman.com
debra.atkinson@akerman.com
**AKERMAN LLP**
Three Brickell City Centre, Suite 1100
98 SE Seventh Street
Miami, FL 33131
Telephone: (305) 374-5600

*Counsel for Defendant*
*UnitedHealthcare Services, Inc.*

10

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that May 1, 2026, I electronically filed the foreoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

Daniel B. Smith, Esq.
MORGAN & MORGAN
3705 N. Himes Ave.
Tampa, FL 33607
Phone: (813) 877-8600
Primary E-Mail: dansmith@forthepeople.com
Secondary E-Mail: kboussebaa@forthepeople.com

Christopher P. Calkin, Esq.
Mike N. Koulianos, Esq.
THE LAW OFFICES OF CHRISTOPHER P. CALKIN, P.A.
808 W. De Leon Street
Tampa, FL 33606
Phone: (813) 258-5008
Designated service e-mail: Service@cpcalkin.com

*Counsel for Plaintiff,*
*Imminent Surgical Associates, P.A.*

*/s/ Irene Bassel Frick*
**Irene Bassel Frick, Esq.**
Florida Bar No.: 0158739
